JOSEPH P. RUSSONIELLO, CSBN 44332
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DOAHUA CHEN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Department of Homeland Security;<br>EMILIO GONZALES, Director of U.S. Citizenship and Immigration Services;<br>CHRISTINA POULOS, Acting Director of California Service Center in U.S. Citizenship and Immigration Services;<br>ALBERTO GONZALES, United States Attorney General,<br><br>    Defendants. | No. C 07-2816 MEJ<br><br>DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT; and DECLARATION OF JANE M. BESSA<br><br>Date: February 7, 2008<br>Time: 10:00 a.m.<br>Courtroom: B, 15th Floor |

## I. INTRODUCTION

Plaintiff Doahua Chen asks this Court to issue a writ of mandamus, compelling the Defendants to make a determination on her application for adjustment of status. She also asks the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act. Plaintiff's claims must fail. Plaintiff's application remains pending because her name check is not yet complete. The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to

Defendants' Cross-Motion for Summary Judgment
C07-2816 MEJ                              1

1 grant their motion for summary judgment.[1]

## II. BACKGROUND

On June 10, 2005, Plaintiff filed an application to adjust status as permanent resident (Form I-485). See Declaration of Jane M. Bessa (Bessa Decl.) ¶ 4 (attached as Exh. A). Plaintiff is a beneficiary of an approved Immigrant Petition for Alien Relative (Form I-130) filed on her behalf by her daughter, Li Tan, a naturalized United States citizen. Bessa Decl. ¶ 3. Plaintiff's application is ready to be adjudicated except for her pending background and security check. Bessa Decl. ¶ 5. Plaintiff filed the instant Complaint on May 30, 2007.

## III. GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. Id. at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim. River City Mkts., Inc. v. Fleming Foods W., Inc., 960 F.2d 1458, 1462 (9th Cir.1992). In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

---

[1] Defendants recognize this Court recently decided this issue in a similar matter. See Shaikh v. Gonzales, 2007 WL 4259410 (N.D.Cal. Dec. 3, 2007), but lacking Ninth Circuit guidance, hereby preserve these arguments for appeal.

Defendants' Cross-Motion for Summary Judgment
C07-2816 MEJ                                                        2

1  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Both parties agree that this case can be
2  disposed of on summary judgment.
3      B. <u>ADJUSTMENT OF STATUS</u>
4      Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes
5  the Secretary of the Department of Homeland Security ("Secretary") to adjust to permanent
6  residence status certain aliens who have been admitted into the United States. Section 1255(a)
7  expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

10  8 U.S.C. 1255(a) (emphasis added). Neither the INA nor applicable regulations impose a
11  particular time-frame on the decision. See 8 U.S.C. § 1255(a); 8 C.F.R. § 245 et seq.
12      Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and
13  Immigration Services ("USCIS") conducts several forms of security and background checks to
14  ensure that the alien is eligible for the benefit sought and that he is not a risk to national security
15  or public safety. USCIS also conducts investigations into the bona fides of petitions and
16  applications that have been filed, in order to maintain the integrity of the application process and
17  to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing
18  "direct and continuous liaison with the Directors of the Federal Bureau of Investigation [("FBI")]
19  and the Central Intelligence Agency and with other internal security officers of the Government
20  for the purpose of obtaining and exchanging information for use in enforcing the provisions of this
21  chapter in the interest of the internal and border security of the United States"). These checks
22  currently include extensive checks of various law enforcement databases, including the FBI. Id.
23      The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-
24  236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007). Name checks are performed at the
25  request of a variety of organizations, including the federal judiciary, friendly foreign police and
26  intelligence agencies, and state and local governments. Id. at *3. When the FBI conducts a name
27  check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3.
28  Generally, the FBI employs a first-in, first-served protocol. Id. at *4. However, when an

applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. Id. USCIS determines which name checks are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. B). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists. This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing times, including "hits," common names, and expedited name checks. Id. at *4.

C. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

The standard for relief under the Mandamus Act and § 706 of the APA is for all practical purposes the same. Shaikh v. Gonzales, 2007 WL 4259410, *2; R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1065 (9th Cir.1997). Mandamus is an extraordinary remedy pursuant to which a court may compel an officer of the government "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Ninth Circuit has held that mandamus is available when: "(1) the plaintiff's claim is clear and certain; (2) the defendant official's duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." Idaho Watersheds Project v. Hahn, 307 F.3d 815, 832 (9th Cir.2002).

Under § 706(1) of the APA, a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further provides that agencies must conclude matters before them "within a reasonable time." 5 U.S.C. § 555(b). In Norton v. South Utah Wilderness Alliance, 542 U.S. 55, 64 (2004), the Supreme Court held that a plaintiff states a claim for relief under § 706(1) when he "asserts that an agency failed to take a discrete agency action that it is required to take."

///

# IV. ANALYSIS

## A. ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED

Courts in this District have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557. Accordingly, Defendants Emilio Gonzalez, Christina Poulos and Alberto Gonzales should be dismissed. See Clayton v. Chertoff, et al., No. 07-cv-02781-CW, slip. op., at 13 (N.D. Cal. Oct 1, 2007); Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007).

## B. RELIEF IS NOT AVAILABLE UNDER THE APA

### 1. Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

Numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; see also Takkallapalli v. Chertoff, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); Li v. Chertoff, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); Sozanski v. Chertoff, et al., No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases). Compelling USCIS to process Plaintiff's application in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner. Accordingly, Plaintiff essentially seeks to compel a discretionary action, and relief is unavailable under the APA.

### 2. The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiff has failed to that the delay at issue here is unreasonable. To determine whether the delay is egregious, such that relief under the APA is warranted, several circuits have adopted the six-part test first articulated in Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC").

a.   A Rule of Reason Governs the Agency Decisions at Issue

The first TRAC factor requires an agency to govern decisions with a rule of reason. TRAC, 750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. See Eldeeb v. Chertoff, No. 07cv236-T-17EAJ, 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007). Once the FBI name check in this case has been completed, USCIS will promptly adjudicate Plaintiff's application. Bessa Decl. ¶ 6. Further, USCIS regularly monitors the case to determine whether the name check remains pending. Id. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

In Plaintiff's case, this means that USCIS must await the results of the FBI name check before reaching a decision on her I-485 application, and the FBI must be given time to perform an accurate and thorough check. Moreover, the FBI's "first in, first out" processing approach is a method that is "deserving of deference." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

b.   There Is No Congressionally Mandated Timetable

The second TRAC factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C. §§ 1105(b)(1), 1255(a).

Defendants' Cross-Motion for Summary Judgment
C07-2816 MEJ                                                6

1    Defendants acknowledge that Congress has observed that in most instances, applications for
2    immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571.
3    However, the statute expresses a "sense of Congress," and is not a mandate. Id. The language in
4    § 1571 is merely precatory, and does not impose a deadline on Defendants. See Wright v. City of
5    Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory
6    terms does not create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007)
7    ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create
8    individual rights, or, for that matter, any enforceable law.").
9    Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See
10   Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114
11   Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard
12   against which the Court can measure the delay at issue in this case. The events of September 11,
13   2001 marked a dramatic shift in issues involving national security. Courts have taken note of this
14   change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

19   Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).
20   Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court
21   must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See,
22   e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by
23   the INS and the need to investigate their validity may make it difficult for the agency to process an
24   application as promptly as may be desirable"). In making a request for immigration benefits,
25   "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195,
26   203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for
27   acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See
28   Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. Id. at *2. Of those remaining checks, 22 percent are returned within two months. Id. The FBI processes name checks chronologically, based on the date the name check is submitted. Id.

Before September 11, 2001, the FBI processed approximately 2.5 million name checks per year, checking only the "main" files. Id. at *3. In Fiscal Year 2006, the FBI processed over 3.4 million name checks. Id. In addition, the FBI began checking "reference" files. Id. This expansion of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit 2.7 million name check requests, for those with pending applications for immigration benefits. Id. at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks; because the FBI processes name checks chronologically, the processing of regular name checks has been delayed. Id. Name checks that exceed the two month window require personal attention of the processing agent. Id. at *5. The FBI currently processes approximately 340,000 name checks per year by hand. Id. Thus, it is evident that there are substantial factors contributing to the backlog.

        c.      The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

The third TRAC factor is the delay's impact on human health, welfare, and economic harm to Plaintiff. This factor's analysis overlaps with the analysis of the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty Fund, 394 F. Supp. 2d at 118. Plaintiff may be inconvenienced by the delay in adjudication, but this individual interest cannot outweigh Defendants' interest in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

Defendants' Cross-Motion for Summary Judgment
C07-2816 MEJ                                                  8

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Bessa Decl., ¶ 8. Additionally, most applicants may also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Thus, when balancing the agencies' interests in defending against threats to national security against the Plaintiff's interest in adjudication, the interests of the nation must prevail.

        d.      The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty Fund, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

Just as in Liberty Fund, Plaintiff's argument of unreasonable delay in this case must also fail. Plaintiff asks this Court to find that USCIS has not adjudicated her I-485 application in a reasonable period of time. Contrary to Plaintiff's pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517, 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." Fraga, 607 F. Supp. at 521.

Similarly, the effect of expediting delayed agency action under the fourth TRAC factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of

Defendants' Cross-Motion for Summary Judgment
C07-2816 MEJ                                         9

1  safeguarding the nation. See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir.
2  2002) ("the government's interest in preventing terrorism is not only important but paramount");
3  see also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the
4  administration of its immigration laws and in preventing [immigration related] document fraud are
5  likewise considerable.")
6    The requests generally processed out-of-order are cases expedited by USCIS for specific
7  health, welfare, or economic reasons. Absent these compelling reasons, moving some individuals
8  to the front of the queue would simply move that group ahead of others who also had been
9  waiting, resulting in no net gain in processing. See In re Barr Lab., 930 F.2d at 75; Mashpee
10 Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore,
11 ordering Plaintiff's case to the front of the line sets the precedent that the more litigious applicants
12 are most likely to move to the top of the pile at the expense of other applicants that have waited
13 even longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801,
14 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of
15 plaintiff's claims would only, "encourage other applicants to file suit to receive expedited
16 treatment rather than wait their turn in line.").
17           e.    The Agencies are Exercising Every Effort to Address the Delay
18    The sixth and last TRAC factor provides that a court need not find impropriety to hold that an
19 agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing
20 the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due
21 to the pendency of Plaintiff's FBI name check. See Bessa Decl. ¶ 5. As discussed above, the FBI
22 is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure
23 that once the name check is complete, USCIS can complete adjudication. Thus, balancing the
24 TRAC factors demonstrates the reasonableness of the Government's actions.
25    In addition, Plaintiff has failed to show that USCIS will refuse to adjudicate her application
26 once the FBI completes the requisite name check. See Saleh, 367 F. Supp. 2d at 513; see also
27 Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was
28 refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps

towards completing the background checks for adjudication of her application. Specifically, USCIS "pre-adjudicated" Plaintiff's application on August 15, 2006. Bessa Decl. ¶ 6. In this case, this means that Plaintiff's case has been reviewed by an adjudications officer and deemed to be approvable upon receipt of the FBI name check clearance. Id.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiff in the present case insists that this Court find an unreasonable delay based solely on the amount of time passed since receipt of her application. However, the law requires a more in-depth analysis for mandamus relief under the APA. A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiff's adjustment of status application.

## V. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendants Emilio Gonzalez, Christina Poulos, and Alberto Gonzales, and grant the remaining Defendants' motion for summary judgment as a matter of law.

Dated: January 7, 2008                                Respectfully submitted,

                                                      JOSEPH P. RUSSONIELLO
                                                      United States Attorney


                                                      ILA C. DEISS
                                                      Assistant United States Attorney
                                                      Attorney for Defendants

## CERTIFICATE OF SERVICE

<u>Chen v. Chertoff, et al.</u>
C 07-2816 MEJ

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she is causing a copy of the following:

**Defendants' Cross-Motion for Summary Judgment; and Declaration of Jane M. Bessa with Exhs. A-B**

to be served this date upon the party in this action by placing a true copy thereof in a sealed envelope, and served as follows:

<u>X</u>    FIRST CLASS MAIL by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

\_\_\_    CERTIFIED MAIL (# ) by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

\_\_\_    PERSONAL SERVICE (BY MESSENGER)

\_\_\_    FEDERAL EXPRESS via Priority Overnight

\_\_\_    EMAIL

\_\_\_    FACSIMILE (FAX)

to the party(ies) addressed as follows:

**Doahua Chen, Pro Se**
**3361 Hadsell Court**
**Pleasanton, CA 94588**
**PH: 925.461.1669 Cell: 925.828.2231**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this January 7, 2008 at San Francisco, California.

\_\_\_/s/_____
LILY HO-VUONG
Legal Assistant

EXHIBIT A

DECLARATION OF JANE M. BESSA

I, Jane M. Bessa, declare as follows:

1. I am employed by the United States Citizenship and Immigration Services (hereinafter "USCIS") as Supervisory Center Adjudication Officer (SCAO) in Adjudication Division VI, at the California Service Center (CSC) in Laguna Niguel, California. I have been employed in this capacity since April 2001 and have been employed in other capacities by the agency since September 1978.

2. This declaration is submitted in support of Defendants' motion for summary judgment in the case of <u>Daohua CHEN v. Chertoff et al.</u>, C07-2816-MEJ on the docket of the United States District Court for the Northern District of California. I am the supervisor of an adjudications team in Division VI at CSC with responsibility for the adjudication of the Applications for Permanent Residence (I-485's) involved in this litigation. The information below is based upon review of the files, electronic records, personal knowledge, and other information that has become known to me in the course of my official responsibilities concerning the adjudication of these applications.

3. Daohua CHEN is a 64 year old year old female, native and citizen of the Peoples' Republic of China, citizen of Canada, who is the beneficiary of an approved Immigrant Petition for Alien Relative (Form I-130) filed on her behalf on June 10, 2005, by her daughter, Li TAN, a naturalized United States citizen. USCIS/CSC approved this I-130 on March 1, 2006.

4. On June 10, 2005, 2005, Plaintiff CHEN filed an Application to adjust status as permanent residents (Form I-485) pursuant to the visa petition mentioned above.

5. On June 28, 2005, a request for background security name check was submitted electronically to the Federal Bureau of Investigations. As of today's date, the name check for Plaintiff CHEN remains pending. Approval of the application to adjust status to permanent resident has been delayed due solely to the pendency of the FBI name check.

6. On August 15, 2006, this application was classified as "pre-adjudicated." That is it had been reviewed by an adjudications officer and deemed to be approvable upon receipt of FBI name check clearance for plaintiff CHEN. The name check database (FBIQUERY) is queried on a weekly basis to determine if the plaintiff's name check has cleared. Plaintiff CHEN has current fingerprints on file with USCIS as of April 3, 2007. These fingerprints will remain valid for 15 months. The plaintiff has also previously cleared the TECS/IBIS name check system operated by the Department of Homeland Security.

7. As the situation stands, there are three possibilities: (1) in the extremely likely event that the FBI name check clears with a finding of "no record" or "NR," CSC can approve the application within 1 or 2 business days of being notified of the clearance; (2) in the event that the FBI reports a "positive response" or "PR," significant additional time would likely be required while USCIS learned the precise nature of the positive information and determined whether it would have any bearing on the outcome of the adjudication, and (3) as long as the FBI query continues to return its current response of "pending" or "IP," this agency's hands are tied, and we are unable to move beyond this point.

8. During the continued pendency of the case, plaintiff is lawfully entitled to apply for employment authorization documents as well as travel documents to permit her to travel outside of the United States.

Declaration of Jane M. Bessa            2            Case No.: C07-2816-MEJ

1  9.   I declare under penalty of perjury that the foregoing is true and correct. Executed this
2  27TH day of Dec, 2007 at Laguna Niguel, California.

*[signature]*

Jane M. Bessa
Supervisory Center Adjudications Officer
California Service Center

EXHIBIT B

*Office of Communications*
**U.S. Department of Homeland Security**



February 20, 2007

# USCIS Update

### USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS–

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security.  USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services, while enhancing our nation's security.